UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JACKIE C. ROWE, MARY ROWE, KENNY J. WERDEHAUSEN, and ANITA WERDEHAUSEN, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 2:04-cv-00022 SNL |
| BENICORP INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM

Plaintiffs Kenny and Anita Werdehausen (the Werdehausens) filed suit against Defendant Benicorp Insurance, under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), claiming that Benicorp wrongfully rescinded their health insurance coverage. This is before the Court on Benicorp's Motion for Summary Judgment (#64), filed October 3, 2005, which asserts that the Werdehausens omitted material information on their health insurance application and, under terms of the policy, Benicorp had the authority to rescind their coverage.

## FACTS

The facts of this case are largely undisputed, although the parties differ widely in their interpretation of those facts.[1] As this is a motion for summary judgment, the Court will recite the

---

[1]The Werdehausens argue that two genuine issues of material fact remain. They are incorrect. Whether Mr. Werdehausen's omissions constitute misstatements is a question of law

1

facts in a manner most favorable to the non-moving party. Plaintiff Kenny Werdehausen, an employee of Doolittle Trailer Manufacturing, applied for an employee-sponsored health and life insurance plan with the Defendant, Benicorp Insurance Company, on November 11, 2002. This plan covered his wife, Anita Werdehausen, and their children, Kyle and Chelsey Werdehausen. The application asked several health questions, requiring that they be answered "thoroughly and truthfully for every person who will be covered." WER-AR 00146.[2] The application further stated that "[a]ny misstatements or omissions of information may be basis for ... voiding coverage entirely." The applicable health question read as follows:

> Within the last five years, has any applicant been hospitalized or had surgery (inpatient or outpatient)? Has any applicant been counseled or advised by a medical practitioner that they had, have, or may have any medical condition that could result in surgery (inpatient or outpatient), any medical condition that could result in non-surgical ongoing, acute or chronic medical treatment; or a medical condition that could result in therapy (inpatient or outpatient) or hospital admission?

WER-AR 00146. The Werdehausens answered: Yes. The Werdehausens were then asked to give "[d]etails of medical treatment (past, current, and planned), medication (past, current, and planned); degree of recovery and other helpful information."[3] WER-AR 00147. Mr. Werdehausen stated that he had "back surgery to fuse a disc" and that his physician's name was Dr. Highland in Columbia, Missouri. WER-AR 00147.

---

not fact. And whether the alleged misstatements were innocent is immaterial, because no fraudulent intent or bad faith is required to constitute a material misstatement. *See Shipley v. Arkansas Blue Cross & Blue Shield*, 333 F.3d 898, 903 (8th Cir. 2003). Therefore this Motion is ripe for review.

[2]All citations to WER-AR refer to the administrative record.

[3]It should be noted that there was only a two and a half inch wide by half an inch high space provided for Mr. Werdehausen to answer this detail oriented question.

Mr. Werdehausen also had problems with his neck, but he did not mention this on his application. Two years earlier, in September of 2000, Mr. Werdehausen went to a doctor, complaining that he could not turn his head and that he was suffering from numbness in his arms. Mr. Werdehausen was prescribed medication and got an MRI of his cervical spine. WER-AR 00210. The MRI showed a possible herniated cervical disc. Dr. Cunningham, who consulted on Mr. Werdehausen's case, prescribed Medrol Dosepak, a oral steroid, and Flexeril, a muscle relaxant. If the Medrol proved insufficient, Dr. Cunningham was to give Mr. Werdehausen epidural steroid injections, and if the injections proved insufficient, the doctor would "consider working him up for [a] possible operative procedure." WER-AR 00215-19. Mr. Werdehausen returned to Mr. Cunningham's office in October. His symptoms had improved greatly, so steroid injections were not required. WER-AR 00219.

Throughout 2001, Mr. Werdehausen focused all medical attention on problems with his lower back. As treatment, he received a series of six steroid injections in his lumbar region. WER-AR 00223-30. Although Mr. Werdehausen still experienced neck pain, his doctor hoped that the steroid injections into the lumbar region would remedy his neck problems, "but if worse comes to worse [they would start] injecting this cervical area as well." WER-AR 00230. In June of 2001, Mr. Werdehausen had a follow-up doctor's appointment to check the progress of the steroid injections. At that appointment, the doctor reviewed an MRI from September of 2000, and found "some degenerative changes" in the cervical region, but made no medical recommendation. WER-AR 231.

Mr. Werdehausen's condition worsened, and on March 11, 2002, he contacted Dr. Bader to discuss surgery for his back and neck. The doctor "tried to steer him away from the back thing

3

because ... his cervical region [was] the area that ha[d] a need for obvious surgery," but stated that an MRI would determine which surgery was necessary. WER-AR 00280. Dr. Bader then referred Mr. Werdehausen to Dr. Highland. Dr. Highland found that the steroid injection in Mr. Werdehausen's neck "actually worked fairly well," and that he suffered from a degenerative disease in his lumbar region. Dr. Highland scheduled and performed a surgical fusion in the lumbar region of Mr. Werdehausen's back on April 30, 2002. WER-AR 00254-55.

On October 29, 2002, Mr. Werdehausen returned to Dr. Bader's office complaining of rib pain. At that appointment, Dr. Bader reviewed all of Mr. Werdehausen's MRI's and x-rays, and found that Mr. Werdehausen would need a surgical fusion of his cervical disc in the future. WER-AR 00281. Approximately one month after this appointment, Mr. Werdehausen applied for insurance with Benicorp, and did not mention any neck problems on his application. Unfortunately, Mr. Werdehausen's neck problems worsened, and on April 22, 2003, Dr. Highland operated on Mr. Werdehausen's cervical region. The next day, Benicorp sent Mr. Werdehausen a letter requesting additional details about his condition. He replied, stating that he had undergone a fusion in his lower back in May of 2002, and had informed doctors of pain in his shoulder and lower back at that time. Benicorp asked if he had been treated for this condition in the past, to which Mr. Werdehausen replied no. Benicorp also inquired if Mr. Werdehausen had been treated for any other serious medical disorders in the past three years. Mr. Werdehausen stated that Dr. Highland performed the lumbar surgery with the knowledge that he would probably need surgery on his neck sometime in the future. WER-AR 00641.

Terry Wrightsman, the policy underwriter, reviewed Mr. Werdehausen's medical files, and determined that had Benicorp been aware of Mr. Werdehausen's "history of cervical problems with planned surgery [it] would have rated the group an additional $2000 [per month] for surgery and follow up treatment." WER-AR 00288-91. Benicorp notified Mr. Werdehausen that there were material omissions on his application for insurance, thereby voiding the Werdehausens' right to coverage. Benicorp rescinded the Werdehausens' policy as of the effective date, and refused to cover any medical expenses. WER AR 00376-381. Mr. Werdehausen sent a letter appealing the rescission, but Benicorp affirmed its decision. WER-AR 00389-390.

The Werdehausens, along with two other Plaintiffs, filed suit against Benicorp in the Marion County Circuit Court. The Plaintiffs charged Benicorp with improperly rescinding their insurance coverage in violation of state and federal law. On April 7, 2004, Benicorp properly removed the case to federal court, because ERISA, 29 U.S.C. § 1001 *et seq.*, provides for federal jurisdiction. Benicorp filed a Motion for Summary Judgment on October 3, 2005. Responsive pleadings have been filed and the motion is ripe for review.

### DISCUSSION[4]

**I.     Summary Judgment Standard**

---

[4] The Werdehausens make several arguments as to how the rescission violates the Health Insurance Portability and Accountability Act and several Missouri statutes. As explained in this Court's Order, dated August 30, 2004, the Plaintiff cannot seek redress under these statutes. Therefore, the Court will not reconsider this issue.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed. R. Civ. P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 467, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow the Court to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In passing on a motion for summary judgment, the Court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The

Court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to its analysis.

## II. Standard of Review

In examining a wrongful denial of benefits claim, the Court must first determine which standard of review is appropriate. Generally, when a plan is governed by ERISA and grants the administrator discretionary authority to determine eligibility for benefits and to interpret policy terms, an abuse of discretion standard is appropriate. *Firestone Tire & Rubber Co. v. Brusch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989); *Barnhart v. Unum Life Ins. Co. of Am.* 179 F.3d 583, 587 (8th Cir. 1999). It is undisputed that Benicorp's policy is governed by ERISA and grants the administrator such discretion.

However, this standard is not applicable if the Plaintiff can demonstrate that either a conflict of interest or a serious procedural irregularity existed, and that this conflict or irregularity caused a "serious breach" of the plan administrator's fiduciary duty. *Buttram v. Cent. States, S.E. & S.W. Areas Health & Welfare Fund*, 76 F.3d 896, 899-900 (8th Cir. 1996); *Barnhart*, 179 F.3d at 587. If a plaintiff can satisfy this "two-part gateway requirement," the Court uses a "'sliding-scale' approach," reducing the deference given to the administrator in an amount commensurate with the severity of the conflict or irregularity. *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998). The Werdehausens argue that both a palpable conflict of interest and serious procedural irregularities existed that caused Benicorp to breach its fiduciary duty.

7

In a Memorandum issued concurrently with this one, the Court found that Benicorp had a palpable conflict of interest, but that this conflict did not cause the company to breach its fiduciary duty. Because the facts and arguments are identical, the Court's previous analysis is equally applicable to this Motion. Benicorp's conflict of interest did not cause it to breach its fiduciary duty to the Werdehausens. The Werdehausens' argument surrounding procedural irregularities, however, requires a separate analysis.

As to procedural irregularities, the Werdehausens first argue that the insurance policy only allows rescission where a misstatement affects the amount or type of coverage, and that Benicorp did not follow that standard when determining materiality. Instead, Benicorp deemed a misstatement material if it caused the insurance premium to increase by five percent or more. The Werdehausens' interpretation of the policy is incorrect. The policy did give Benicorp the right to change or terminate an insured's coverage where "misstatement of facts affects his/her amount or type of insurance," but this clause neither sets the standard for materiality nor limits Benicorp's ability to terminate coverage. WER-AR 00020. Benicorp expressly "reserve[d] the right to terminate the coverage of an insured person who has made a material misstatement in their group enrollment form." WER-AR 00028. There is nothing in the application or policy that defines Benicorp's materiality standard. Because of this, Benicorp's standard could not violate the policy.

Next, the Werdehausens argue that Benicorp misapplied or failed to apply its own materiality standard to determine if the misstatements were material. This argument also fails. After reviewing the steps taken by the underwriter, the Court finds that Benicorp properly followed its procedures. Lastly, the Werdehausens state that Benicorp automatically rescinds an insurance policy whenever

8

an insured makes a material misstatement, even though the policy allows for the retroactive adjustment of premiums. Because of this, Benicorp's procedural guidelines prohibit the exercise of any discretion. The Werdehausens cite no caselaw, nor have they made a comprehensive argument to support this proposition. Therefore, this legal assertion is unfounded.

Because the Werdehausens have not established that a serious procedural irregularity existed, they have not shown that Benicorp is entitled to a less deferential standard of review. The Court will examine Benicorp's denial of the Werdehausens' insurance benefits under an abuse of discretion standard.

### III. Rescission of Health Insurance: Abuse of Discretion Review

Under an abuse of discretion standard, a court will uphold the administrator's decision to rescind an insurance contract if its decision was "reasonable." *McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 924 (8th Cir. 2004); *Coker v. Metropolitan Life Ins. Co.*, 281 F.3d 793, 797 (8th Cir. 2002); *Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002); *Delta Family-Care Disability & Survivorship Plan v. Marshall*, 258 F.3d 834, 841 (8th Cir. 2001). A plan administrator's decision is considered to be "reasonable" if it is supported by substantial evidence "which is more than a scintilla, but less than a preponderance." *Ferrari*, 278 F.3d at 807 (quoting *Woo*, 144 F.3d at 1162). *See also McGee*, 360 F.3d at 924; *Coker*, 281 F.3d at 797; *Delta Family-Care*, 258 F.3d at 841. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McGee*, 360 F.3d at 924 (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). A court must affirm a plan administrator's

decision to rescind if a "reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." *Ferrari*, 278 F.3d at 807 (quoting *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997)). Even if a different, reasonable decision could have been made, the plan administrator's decision must be affirmed. *McGee*, 360 F.3d at 924; *Cash*, 107 F.3d at 641.

When reviewing the plan administrator's decision under the abuse of discretion standard, a court can only consider the evidence that was before the plan administrator when the claim was denied. *Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640, 642 (8th Cir. 2002); *Farley v. Arkansas Blue Cross & Blue Shield*, 147 F.3d 774, 777 (8th Cir. 1998). Furthermore, the reviewing court cannot substitute its own weighing of the evidence for that of the plan administrator. *Farley*, 147 F.3d at 777; *Cash*, 107 F.3d at 641.

The Eighth Circuit "allows for the equitable rescission of an ERISA-governed insurance policy that is procured through the material misstatements or omissions of the insured." *Shipley*, 333 F.3d at 902. The misrepresentation or omission must be made knowingly, but the insured need not have any fraudulent intent or bad faith. A knowing but innocent misrepresentation or omission, if material, is sufficient to give an insurer cause to rescind. *Id.* at 903. Therefore, the Court must determine whether a reasonable person could have found that Mr. Werdehausen knowingly omitted material information.

A.  <u>Misrepresentation</u>

Benicorp alleges that Mr. Werdehausen made a misrepresentation by failing to disclose his neck problems on the application for insurance. "A misrepresentation is a statement of fact that is untrue or a failure to disclose a fact in response to a specific question." *Shipley*, 333 F.3d at 904. Mr. Werdehausen was asked a specific question: whether he was advised by a medical practitioner that he may have a medical condition that could require surgery. And the evidence shows that Mr. Werdehausen was aware of his neck condition. One month before completing his insurance application, Mr. Werdehausen reviewed his MRI's and x-rays with his doctor, and the doctor noted the clear need for surgery. In sum, Mr. Werdehausen had knowledge of a medical condition that was responsive to a specific question, but did not disclose this information.

It is clear that Mr. Werdehausen did not omit this information with the intent to deceive Benicorp. He had no reason to. Mr. Werdehausen gave a short plain statement of his most obvious medical problem and assumed that Benicorp would contact his medical practitioners for further information. This assumption was reasonable, but unfortunately, it was incorrect. "When a plan places the burden on the claimant to provide necessary information, the claimant cannot shift the burden of investigation to the plan administrator." *Sahulka v. Lucent Tech., Inc.*, 206 F.3d 763, 769 (8th Cir. 2000). However reasonable Mr. Werdehausen's assumption, and however innocent his intentions, this omission qualifies as a misstatement under Eighth Circuit caselaw. *See Shipley*, 333 F.3d at 903.

B.  Materiality

"In cases governed by ERISA, misstatements or omissions have been deemed material where knowledge of the true facts would have influenced the insurer's decision to accept the risk or its assessment of the premium amount." *Id.* at 905. In its letter rescinding the Werdehausens' policy, Benicorp stated that had it initially known of Mr. Werdehausen's cervical problems, it would have issued coverage at a significantly higher premium rate. WER-AR 00380. The Werdehausens have admitted that the "misstatements in this case effect the premium." Plaintiff Werdehausens' Statement of Uncontroverted Facts, ¶ 3. Therefore the Court's analysis need not go any further. As a matter of law, Mr. Werdehausen's omission was material.

## CONCLUSION

Benicorp's decision was supported by substantial evidence. Mr. Werdehausen omitted material information regarding a known condition. Therefore, Benicorp's determination withstands an abuse of discretion review. The Defendant's Motion for Summary Judgment (#64), is granted.

Dated this 1st day of February, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE